UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY UNDERWOOD & JOYCE AGIOBENEBO,<br><br>Plaintiffs,<br><br>v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT, *et al.*<br><br>Defendants. | Case No.: 25-cv-00088-JO-VET<br><br>**MINUTE ORDER GRANTING DEFENDANTS' RENEWED MOTION TO DISMISS [DKT. 41]** |

On February 12, 2026, the Court held oral argument on Defendants' renewed motion to dismiss Plaintiff's Second Amended Complaint. For the reasons stated below and on the record at oral argument, the Court grants Defendants' renewed motion to dismiss [Dkt. 41].

1. On July 23, 2025, Plaintiff filed a Second Amended Complaint, which raised six claims under 42 U.S.C. § 1983. Dkt. 32 ("SAC").

2. On October 22, 2025, for the reasons stated on the record at the October 16, 2025 hearing and in its order, the Court dismissed with prejudice Plaintiff's claims that (1) Defendant Kern held A.A. after school on January 22, 2024 for an interview with social workers without Plaintiff's consent, in violation of his right to familial

1

association; and (2) his claim that Defendants violated Ms. Agiobenebo's Fifth Amendment rights by pressuring her to do an interview with a social worker on January 22, 2024.  Dkt. 40.

3. On the same date, it dismissed with leave to amend (1) Plaintiff's judicial deception claim that Defendants Kern and Meredith made false statements to police and child protective services that impacted the outcome of A.A.'s custody proceedings; and (2) his claim that Defendants Kern, Meredith, and Kinoshita excluded Plaintiff from participating in A.A.'s education after removing his name from her enrollment form on January 22, 2024, violating his Fourteenth Amendment right to direct his child's education. *See id.*  Because Plaintiff failed to amend these claims and was warned that failure to do so would result in these claims being waived, the Court now dismisses them with prejudice.

4. For the reasons stated on the record at the February 12, 2026 hearing and below, the Court orders as follows for Plaintiff's two remaining claims:

5. The Court dismisses Plaintiff's familial association claim against Vice Principal Kern for lying about his daughter's whereabouts during the abuse investigation on January 19, 2024.  He claims that by doing so, this school official separated him from A.A. for several hours in violation of his constitutional rights. *See* SAC at 10:11–14, 12:20–21, 33:5–14, 43:3–25. Parents have a familial association right not to be separated from their children without due process of law unless a child is in imminent danger. *Keates v. Koile*, 883 F.3d 1228, 1236–38 (9th Cir. 2018).  Among other things, to make out this kind of familial association claim, "plaintiffs must establish that an actual loss of custody occurred; the mere threat of separation or being subject to an investigation, without more, is insufficient." *Dees v. Cnty. of San Diego*, 960 F.3d 1145, 1152 (9th Cir. 2020).

6. Here, it is unclear whether Vice Principal Kern's alleged actions violated Plaintiff's parental rights because she did not remove A.A. from Plaintiff's custody or care, even though by lying to him about her whereabouts, she caused

25-cv-00088-JO-VET

the two to be separated for several hours. *See* SAC at 10:11–14 (alleging that San Diego police officers, not Kern, removed A.A. from the school and brought her to the hospital), 33:11–34:14 (alleging that Kern lied to Plaintiff that A.A. was not at the school, and after he had left, lied to police that she had not seen the parents all day); 10:11–12:22 (alleging that A.A. was separated from Plaintiff until 9:30 p.m. that evening). While it is clearly established that social workers who take children into their custody for medical examinations or remove children from their parents' homes may violate familial rights, Plaintiff has pointed to no cases establishing the same for school officials who mislead parents about their children's whereabouts during an abuse investigation. *See Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1161 (9th Cir. 2018) ("the state is required to notify parents and to obtain judicial approval before children are subjected to investigatory physical examinations"); *Demaree v. Pederson*, 887 F.3d 870, 884 (9th Cir. 2018) (clearly established that a social worker cannot remove a child from their parent's home if there is no imminent risk of serious bodily harm).

7. Even if lying to a parent about their child's whereabouts could form the basis of a familial association claim, the law is unclear that the several-hour separation at issue here arises to the level of a constitutional injury. The Ninth Circuit has not delineated how much separation is required to show "actual loss of custody" for purposes of a familial association claim. *Compare Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1060 (9th Cir. 2019) (no loss of custody for familial association claim where unfounded child abuse investigation did not lead to the termination of parental status)*, and Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1167 (9th Cir. 2014) (officers separating father from son for forty minutes during police investigation did not give rise to familial association claim because separation was "brief")*, with Dees*, 960 F.3d at 1153 (suggesting that loss of control could potentially suffice, but finding that five-minute interview did not constitute loss of control)*, and James v. Rowlands*, 606 F.3d 646, 653–54 (9th

25-cv-00088-JO-VET

Cir. 2010) (father plausibly alleged familial association claim where child protective services took child into protective custody and placed her with grandparents for weekend without notifying him).

8. Because it was not clearly established that Vice Principal Kern's misleading statements about A.A.'s location would violate familial association rights, nor that the separation caused was significant enough to arise to a constitutional injury, she is entitled to qualified immunity. *Keates*, 883 F.3d at 1239 (defendant is entitled to qualified immunity if right was not clearly established); *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (for a right to be clearly established, its contours must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that [s]he was violating it") (internal quotations omitted). The Court dismisses this claim with prejudice because additional allegations could not overcome the bar of qualified immunity. *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 725–26 (9th Cir. 2000) (court may deny leave to amend where amendment would be futile).

9. The Court also dismisses Plaintiff's First Amendment claim that Defendants Kern, Meredith, and Kinoshita retaliated against him for challenging the way they handled the January 19, 2024 child abuse investigation by (1) removing his name from his daughter's enrollment form; and (2) seeking to exclude him from the school premises. SAC at 51:5–53:26. "To state a First Amendment retaliation claim, a plaintiff must plausibly allege that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp*, 940 F.3d at 1053 (internal quotation omitted). To establish the necessary causal link between their protected activity and the retaliation, a plaintiff must show that the adverse action "would not have been taken absent the retaliatory motive." *Id.*

25-cv-00088-JO-VET

10. First, Plaintiff has not pled a sufficient causal link between his January 22, 2024 complaint to school officials about the handling of his daughter's child abuse investigation and their alleged retaliation of removing his name from her enrollment form. By his own account, when he complained on the morning of January 22, 2024, he was immediately presented with school records that showed he was not listed as A.A.'s father. SAC at 15:10–16:8. Because his pleadings indicate that the school action to remove his name from A.A.'s enrollment form preceded the allegedly protected activity of challenging the school's handling of the investigation, the protected activity could not have caused the retaliation.

11. Second, Plaintiff's First Amendment claim based on Vice Principal Kern's inquiry into banning him from school grounds fails because Plaintiff has not pled a retaliatory action that would be likely to chill a person from exercising their rights. His pleadings indicate that Kern neither threatened Plaintiff that she would ban him from the school premises nor actually banned him. Instead, Plaintiff only alleges that after he had left the meeting with Kern on January 22, 2024, she asked school police to speak with the principal about doing a stay away letter—a request that never materialized into an actual ban and that Plaintiff only found out about after the fact. *See id.* at 53:7–22 (school police call report stated that "RP will speak to Principal regarding doing a stay away letter and call back to advise"), 71:21–25. While excluding a parent from school premises or threatening to do so might chill a parent from exercising their rights, merely exploring the possibility, unbeknownst to the parent, by asking school police to speak with the principal about a stay away letter, would not have the same effect. Because an individual of ordinary firmness would not be deterred from future speech by this alleged action, the Court finds that Plaintiff has not adequately pled that Kern engaged in a retaliatory action prohibited by the First Amendment. *Capp*, 940 F.3d at 1053 (to make out a First Amendment claim, a plaintiff must

allege a retaliatory action that would "chill a person of ordinary firmness from continuing to engage in the protected activity").

12. In the alternative, Vice Principal Kern would be entitled to qualified immunity because her action, even if it could be construed as a threat or an actual ban from school grounds, would not violate clearly established rights. "In the First Amendment context, the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a particular type of government action." *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 742 (9th Cir.), *cert. denied,* 146 S. Ct. 298 (2025) (internal quotations and citations omitted). The Ninth Circuit has cautioned that because of the "special characteristics of the school environment," "cases arising outside public schools are of limited use in evaluating the scope of First Amendment rights" within schools. *Id.* at 743. As of January 2024, when these events transpired, parents did not have a clearly established right to be free from being banned from school grounds, even if school officials took this action in retaliation for the parents' speech. *Hartzell*, 130 F.4th 722, 743 (holding that school principal was entitled to qualified immunity for retaliatory decision to ban parent from school because as March 5, 2025, there was "neither a case of controlling authority nor a consensus of cases of persuasive authority" establishing this right).[1] Plaintiff points to no cases demonstrating otherwise. Because it was not clearly

---

[1] It appears that *Hartzell* established the right to be free from being banned from a school for criticizing school officials, *see id.* at 737, but Vice Principal Kern's actions preceded this decision. Prior to *Hartzell*, the Ninth Circuit had held that parents enjoy a right "to be free from retaliation in the form of threatened legal sanctions and other similar means of coercion, persuasion, and intimidation" by social workers, but Plaintiff's retaliation claim is not brought against social workers and does not involve a threat of legal sanctions, loss of custody, or any other similar means of coercion. *Sampson v. Cnty. of Los Angeles by & through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1020 (9th Cir. 2020) (parent enjoyed clearly established right to be free from social worker accusing them of "neglect and abuse and convincing the juvenile court to temporarily remove [child] from [parent's] custody"); *see also Capp*, 940 F.3d at 1055 (same).

25-cv-00088-JO-VET

established that attempting to or actually banning Plaintiff from the school would violate the First Amendment on January 22, 2024, when Defendant Kern took these actions, Defendant Kern is entitled to qualified immunity. Therefore, the Court dismisses this claim without leave to amend.[2] *Chappel*, 232 F.3d at 725–26.

13. The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED**.

Dated:  March 13, 2026

_____

Honorable Jinsook Ohta
United States District Judge

---

[2]  Amendment would be futile because even if the Court allowed Plaintiff to amend his complaint to allege that he was threatened or actually banned from the school, Defendant Kern would still be entitled to qualified immunity for the reasons stated above.

7